UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ADAMA NJIE, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| v. | )   No.: 16-4223-SLD |
| | ) |
| SALVADOR A. GODINEZ, et al., | ) |
| | ) |
|         Defendants. | ) |

### MERIT REVIEW SECOND AMENDED COMPLAINT

Plaintiff files a second amended complaint against 19 defendants at the Hill Correctional Center ("Hill"), alleging violations of the First, Eighth and Fourteenth Amendments, and the Religious Land Use and Institutionalized Persons Act (RLUIPA).[1] The Court had issued a merit review of Plaintiff's prior amended complaint where it dismissed several of his claims for issue preclusion, as having been considered and denied in another of Plaintiff's cases, *Njie* v. *Godinez*, No. 14-1079 (C.D. Ill. Mar. 6, 2014) ("*Njie I*"). Plaintiff has largely reasserted these claims in his second amended complaint.

The second amended complaint is now before the Court for merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations", it requires "more than an unadorned, the-

---

[1] 42 U.S.C. "" 2000cc to 2000cc-5.

1

defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff has filed a lengthy complaint with almost 100 pages of exhibits and asks that the Court incorporate exhibits from the original complaint into the second amended complaint. [ECF 48 pp. 4-5]. He also files an additional motion requesting that Exhibit J of the second amended complaint, a report written by "Korte," be exchanged for the February 15, 2015 report written by Defendant Brackett. [ECF 49]. Fed.R.Civ.P. 8(a)(2), however, requires that a pleading contain a short and plain statement showing that the pleader is entitled to the relief sought. Plaintiff's confusing request to cross reference exhibits provides for neither a short nor plain complaint and is unnecessary at the pleadings stage. *See Fitzgerald v. Dep't of Corr.*, No. 07-61, 2007 WL 951861, at *1 (W.D. Wis. Mar. 26, 2007) (grievances and facility responses attached to the complaint were not "necessary" and not considered by the court). The Court hereby undertakes a merit review of the second amended complaint without referencing the attached exhibits. Accordingly, that portion of Plaintiff's filing at [EF 48 pp. 4-5], as well as his motion at [ECF 49] is DENIED.

### PRIOR HISTORY

Plaintiff is a Rastafarian who had filed previous claim, in *Njie I,* alleging in part, that his religious rights were violated as Hill did not provide regular Rastafarian chapel services, did not provide him a "pure" Ital religious diet, and that religious articles sent by the Rastafarian congregation had been confiscated. During the pendency of *Njie I,* Defendant Dorethy published a January 26, 2015,Warden's Bulletin introducing a new Individual Grooming Policy. The policy provided that prisoners whose hair was deemed unsearchable would be required to cut their hair. When Plaintiff learned that his dreadlocked hair was found to be unsearchable, he filed a

2

motion for preliminary injunction, to prevent it being cut, asserting that long dreadlocks are an essential part of his religious observance. On February 17, 2015, while the motion was pending, the dreadlocks were forcibly cut.

On May 11, 2016, the *Njie I* court conducted an evidentiary hearing regarding the application of the grooming policy, finding that the controversy was one "capable of repetition" while "evading review." *Turner v. Rogers*, 131 S.Ct. 2507, 2515 (2011). Stephanie Dorethy, the Hill Warden, testified that dreadlocks can pose a security risk as they can be used to hide weapons or other contraband. She noted that this is particularly true with dreadlocks which are thick, rather than those which are long. Warden Dorethy testified that she personally made the determination as to whether a prisoner's hair was unsearchable and found Plaintiff's dreadlocks too thick to be searched. Warden Dorethy testified that of the 1600 prisoners at Hill, she had found 13 out of compliance.

Plaintiff testified as well and, though given an opportunity, did not identify a less restrictive means by which the identified safety and security goals could be achieved. The Court found that, while the Hill grooming policy substantially burdened Plaintiff's religious exercise, it was the least restrictive means of promoting a compelling governmental interest. *Njie I,* No. 14-1079 [ECF 68], citing *Holt v. Hobbs*, U.S.,135 S.Ct. 853, 863 (2015). The court eventually dismissed the *Njie I* complaint at summary judgment. Plaintiff has filed an appeal which is currently pending before the Seventh Circuit Court of Appeals.

Plaintiff subsequently filed the *instant* case, *Njie II,* in which he asserted, in part, that his constitutional rights were violated when he was subjected to a forced hair cutting under the Individual Grooming Policy. The Court initially dismissed the complaint as duplicative of the claims in *Njie I*. The Seventh Circuit Court of Appeal, however, remanded the matter, finding

3

that while there was "overlap," all the claims were not identical. On remand, the Court undertook a merit review of Plaintiff's amended complaint and determined that the allegations regarding the forced haircutting were barred by issue preclusion as they had been fully and fairly litigated in the *Njie I* evidentiary hearing. *Robinson v. Walter*, 21 Fed.Appx. 505, 507-08, 2001 WL 1402445, at *2 (7th Cir. 2001). *See Stericycle, Inc. v. City of Delavan*, 929 F. Supp. 1162, 1165 (E.D. Wis. 1996), *aff'd,* 120 F.3d 657 (7th Cir. 1997) (a finding on injunctive relief may preclude litigation of that same issue in another claim). The Court dismissed the claim against Defendants Dorethy, Steele, McCue, Collins, Henderson, Brackett, Damewood, King, Fredrickson and Carothers.

*Njie II* proceeded on the claims that Defendants McCue and Collins allegedly violated Plaintiff's First Amendment and RLUIPA rights when they denied him a contact visit on October 16, 2015, and that Defendants Carothers and Fredrickson were deliberately indifferent when they refused Plaintiff access to food in his property box on February 10, 2015. Plaintiff was given an opportunity to replead his claim that Defendant Matherly his due process rights for writing him a disciplinary ticket and that Defendant McCune exerted excessive force against him.

## ANALYSIS

<u>Forcible Hair Cutting</u>

As noted, the Court had dismissed the allegations of Plaintiff's amended complaint which asserted that the forced cutting of his hair was unconstitutional. Plaintiff has filed numerous objections to the dismissal of this claim and files a second amended complaint in which he reasserts it. [ECF 31, 36, 37, 47 and 48]. In addition to repleading against Defendants Dorethy, Steele, McCue, Collins, Henderson, Brackett, Damewood, King, Fredrickson and Carothers, Plaintiff adds a new Defendant, Steve Abron, the barber who cut his hair.

4

Plaintiff alleges that Defendants had his dreadlocks cut in retaliation for his filing a lawsuit against Defendant Steele and others, and that they conspired to harass and discriminate against him by requiring that he cut his hair. As noted, however, the *Njie I* court had found that Plaintiff's hair was unsearchable, and that it was cut in furtherance of a compelling governmental interest. As a result, Plaintiff is precluded from asserting that this is merely pretext and that the cutting of his hair was done in retaliation. The Individual Grooming Policy as applied to Plaintiff on February 17, 2015, was found constitutional by the *Njie I* court and may not be relitigated here.

Contact Visit of October 16, 2014

Plaintiff also alleges that Defendants impermissibly denied him a contact visit on October 16, 2014. On that date, Defendant McCue told Plaintiff that he would be allowed a non-contact visit but not a contact visit, due to his dreadlocks. Plaintiff complained to Defendant Collins who, similarly, would not allow the contact visit. Plaintiff asserts that he had been allowed a contact visit approximately six months prior, on March 27, 2014, and that he was wrongfully refused on the later date. He also asserts that other inmates with dreadlocks were allowed contact visits. Plaintiff claims particularly, that on October 16, 2014, inmate Jones was allowed a contact visit though he had long dreadlocks. When Plaintiff complained, staff terminated inmate Jones's contact visit as well.

While it is unknown whether those other inmate who were allowed contact visits had dreadlocks the size or thickness of Plaintiff's, these allegation are enough at the pleadings stage. Plaintiff has pled a colorable claim that Defendants McCue and Collins violated his First Amendment and RLUIPA rights when they denied him a contact visit on October 15, 2014.

5

Plaintiff alleges that he wrote letters or grievances to Defendants Godinez, Gomez, and Dorethy, complaining of the denied contact visit. An individual is liable under § 1983, however, only if he or she personally participated in the alleged deprivation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003); *Glasco v. Prulhiere*, 2009 WL 54298, at *1 (S.D. Ind. Jan. 8, 2009) ("[e]ven if [ plaintiff] wrote letters to these defendants, this fact alone is insufficient to support recovery from supervisory defendants."); *Diaz v. McBride*, 1994 WL 750707, at *4 (N.D. Ind. Nov. 30,1994) (holding that a plaintiff could not establish personal involvement, and subject a prison official to liability under section 1983, merely be sending the official various letters or grievances complaining about the actions or conduct of subordinates.)

Plaintiff fails to successfully allege a claim against Defendants Godinez, Gomez and Dorethy and the claim against them is dismissed. Plaintiff also asserts that when he told Defendant Henderson that he had been denied a contact visit, Defendant responded that he, Henderson, did not have an issue with Plaintiff's dreadlocks. This also fails to allege that Defendant Henderson personally participated in a constitutional violation and he is DISMISSED as well.

Ital Diet

Plaintiff reasserts the claim dismissed in *Njie I*, that he is not receiving an Ital religious diet of "pure" foods, identified as foods which are natural, organic and unprocessed. In *Njie I,* the Court noted that the Hill Religious Advisory Board had determined that a lacto-ovo diet met the requirements for a Rastafarian religious diet. The court dismissed the claim as to the Ital diet at summary judgment, finding that Plaintiff had not identified a material issue of fact to support that the lacto-ovo diet substantially burdened his religious practice, or that there was a reasonable way in which the prison could accommodate Plaintiff's request for a religious diet. *Njie I*, No.

14-1079 [ECF 100 pp. 10-11], citing *Benjamin v. Coughlin*, 708 F. Supp. 570, 575-576 (S.D.N.Y. 1989), *aff'd,* 905 F.2d 571 (2d Cir. 1990) (it would cause undue financial and administrative burdens to provide an Ital diet that met with the religious views of every Rastafarian inmate.") *See also*, *Udey v. Kastner*, 805 F.2d 1218 (5th Cir.1986) (the costs and inequities of feeding some prisoners only fresh foods and others canned foods, "would create undue costs and administrative burdens, and have a potentially disruptive effect on prison discipline…"). As this claim was decided in *Njie I*, it is barred by issue preclusion, and Plaintiff may not reassert it here.

On February 10, 2015, Plaintiff met with Defendant Carothers of Internal Affairs and complained that he was not receiving a strict Ital diet. Plaintiff admittedly told Defendant, that as he was able to obtain refried bean, white rice, Raman noodles and oatmeal, he "could work with the food[,] meaning eat it." Defendant Carothers allegedly responded that he did not care about Plaintiff's diet but wanted to know if he would cut his hair. Plaintiff refused to do so and Defendant Carothers issued him a disciplinary ticket.

Plaintiff was subsequently taken to the bullpen to await placement in segregation. While there, he asked Defendant Fredrickson to retrieve food he had stored in his property box. This is, presumably, the refried bean, white rice, Raman noodles and oatmeal mentioned to Defendant Carothers. Defendant Fredrickson refused to do so and Plaintiff alleges that as a result, "he [Fredrickson] did not give me an option to eat for 8 days." Plaintiff does not claim that he did not receive his lacto-ovo diet, only that he wasn't given the items in his property box. Plaintiff subsequently went on hunger strike and claims that Defendant Frederickson refused to record it, though he does not allege he suffered any injury as a result.

The claims against Defendant Fredrickson will proceed pending a more fully developed record, though it is unclear whether Defendant had the authority to give a segregation inmate access to a property box, and unclear as to whether Plaintiff was injured by Defendant not recording the hunger strike. Plaintiff makes no actionable claim against Defendant Caruthers and he is DISMISSED as to this count.

On February 12, 2015, Defendant Carothers visited Plaintiff in segregation, again ordering him to cut his hair. Plaintiff refused and Defendant issued him a second disciplinary ticket. On February 15, 2015, Defendant Brackett ordered Plaintiff to cut his hair and issued him a disciplinary ticket when he refused. Plaintiff remained in segregation until February 17, 2015, when a tactical team extracted him from his cell. Plaintiff alleges that they "kidnapped" him and took him by force to the barber, Defendant Abrom, who cut his hair. Plaintiff also claims that during the extraction, Defendant McCune used excessive force, unnecessarily slamming his right shoulder to the wall and pinning him against the wall even though his hands were cuffed behind his back. Plaintiff's allegations that he was kidnapped fail to state a claim. His allegations that Defendant McCune used unjustifiable excessive force state enough for this claim to proceed.

On February 16, 2015, Plaintiff went before the Adjustment Committee for hearing on the February 10, 2015 ticket written by Defendant Carothers. At that time, Plaintiff argued to Defendants Damewood, and King that his dreadlocks had previously been allowed, and that he did not believe that his dreadlocks violated the grooming policy. Plaintiff was found guilty and sentenced to five days in segregation. He claims that this finding evidenced bias by Defendants Damewood, and King and that the lack of a "civilian" committee member violates due process. Here, however, Plaintiff had admittedly disobeyed a direct order, based on a policy determined

8

to be constitutional. Furthermore, he offers nothing to substantiate that the absence of a civilian member on the Adjustment Committee violated due process.

On February 17, 2015, Plaintiff had another Adjustment Committee hearing on the February 12, 2015 ticket written by Defendant Carothers and the February 15, 2015 ticket written by Defendant Brackett. Plaintiff asserts that the Committee report falsely stated that he had admitted his guilt. While Plaintiff might assert he was not "guilty" of an infraction as his hair was not out of compliance, he freely admits refusing to cut his hair though ordered to do so by at least two Defendants. As a result, Plaintiff fails to allege a violation of procedural due process as to the disciplinary tickets or the adjustment committee hearings. This claim against Defendants Caruthers, Brackett, Damewood, and King is DISMISSED.

Plaintiff also alleges that Defendant Bryant "harassed" him on November 17, 2015, asking whether anyone had spoken to him again about cutting his hair. This fails to state a constitutional claim as the statement appears to have been made in enforcement of a prison policy rather than as harassment. As this is the only allegation against Defendant Bryant, he is DISMISSED.

<u>Defendants Godinez, Gomez, Yurkovich, McLaughlin and Robinson</u>

Plaintiff alleges that Defendants Godinez, Gomez, Yurkovich, Dorethy, McLaughlin and Robinson are liable as they are all "legally responsible" for operations either at the Illinois Department of Corrections ("IDOC") or Hill. While Plaintiff claims that these individuals are responsible due to their supervisory roles, the doctrine of *respondeat superior* (supervisor liability) does not apply to actions filed under 42 USC §1983. *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). Plaintiff makes the additional claim as to Defendant Gomez that on April 9, 2015, he told Defendant of the unconstitutional grooming policy. This fails to state a claim

against Defendant Gomez, as it does not allege his personal participation and because the grooming policy was not unconstitutionally applied. Defendants Godinez, Gomez, Yurkovich, Dorethy, McLaughlin and Robinson are again DISMISSED.

Plaintiff makes a new claim that Defendant Steele wrongly identified him as a member of the Gangster Disciples in retaliation for his filing lawsuits. This allegation, however, is unrelated to the other claims regarding the alleged religious discrimination and is DISMISSED for misjoinder. The same applies to Plaintiff's claim that Defendant Matherly wrote him a false disciplinary ticket on October 14, 2015 for refusing to take his braids down during a strip search. A plaintiff may join several defendants in one suit only if the claims arose out of a single transaction and contain a question of fact or law common to all the defendants. Fed.R.Civ.P. 20(a); *Davis v. Harding*, 12-cv-559, 2013 WL 6441027, at *2 (W.D. Wis. Dec. 9, 2013). These claims are improperly joined. *See Wilson v. Bruce*, 400 Fed. Appx. 106 (7th Cir. 2010) (upholding the District Court's finding of misjoinder). "Though all are based on events that allegedly took place during [Plaintiff's] detention, the…claims otherwise share no common questions of law or fact." *Id.* at 108.

**IT IS THEREFORE ORDERED:**

1) Plaintiff's Motion for Leave to File a Second Amended Complaint [ECF 48] is GRANTED. The Clerk is directed to file the Second Amended Complaint along with the Court's merit review order.

2) This case will proceed on Plaintiff's claims that Defendants McCue and Collins violated his rights under the First Amendment and RLUIPA when they denied him a contact visit on October 16, 2015; that Defendant Fredrickson was deliberately indifferent on February 10, 2015, when he refused Plaintiff access to the food in his property box; and that Defendant

McCune exerted excessive force against Plaintiff on February 17, 2015. All other claims are DISMISSED. Defendants Godinez, Gomez, Yurkovich, Dorethy, Steele, Henderson, Brackett, Damewod, King, Carothers, McLaughlin, Robinson, Bryant, Matherly and Abron are DISMISSED.

       3)     Plaintiff's motions requesting that the Court substitute exhibits attached to his Second Amended Complaint [EF 48 pp. 4-5] and his motion to substitute Exhibit J [ECF 49], are DENIED.

  2/13/2019                                  s/Sara Darrow
DATE                                          SARA DARROW
                                               UNITED STATES DISTRICT JUDGE